No. 33,720

THE PEOPLES BANK, of Pratt, *Appellee*, v. W. H. SELLON et al., *Appellants*.

(78 P. 2d 25)

Opinion filed April 9, 1938.

*William B. Hess,* of Pratt, for the appellants.

*D. E. McCrory, William Barrett, George Barrett* and *Robert G. Miller,* all of Pratt, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action on a promissory note. Judgment was for plaintiff. Defendants appeal.

In 1934 defendants were indebted to plaintiff in the amount of $2,900. This debt was secured by a second mortgage on real estate and a chattel mortgage on livestock and other personal property. The Federal Land Bank of Wichita and the Prudential Insurance Company held first mortgages on the land owned by defendants. In the spring of 1934 defendants were unable to pay their debts and the interest on the mortgage on their real estate. They applied to the Federal Land Bank at Wichita for a loan on their real estate. This application was approved in the amount of $7,500 by the Federal Land Bank, and for a loan of $4,200 by the land bank commissioner, provided that this amount would pay all debts except a chattel mortgage on livestock not to exceed $1,400. .

The entire plan included contemplated agreements on the part of creditors to accept a given amount in payment of the debt owed them. The idea was that the government agencies would not lend the borrower money unless the amount he was deemed able to borrow was sufficient to pay off all his indebtedness and give him a new start. The way this was done was to submit what was called a "creditor's statement" to each creditor. The document is something new in our business life. We are just beginning to encounter one occasionally on appeals brought to this court. It stated what the indebtedness of the borrower to the particular creditor was and how much the creditor would take to satisfy this indebtedness. At any rate, such a statement was submitted to plaintiff. It was executed by plaintiff, and stated that the indebtedness of defendants to it was $2,900 principal and $156 interest secured by a mortgage on real and personal property. The plaintiff agreed that upon payment to it of the balance of the proceeds of the loan to be made by the Federal Land Bank, and the payment of the Prudential Insurance Company mortgage of $2,000, this amount to be endorsed on the chattel mortgage, it would carry the balance on livestock and other chattel security. Plaintiff also agreed to release its mortgage upon the real estate of the defendants on payment to it of $1,292 and to carry the balance on the personal property of defendants. The printed form of this creditor's statement contained the following statement:

". . . and that when said consideration is paid all claims of this creditor against the above-named debtor will have been satisfied in full."

This clause was lined out with ink before plaintiff executed the statement.

When this proposition was submitted to the Federal Land Bank that institution advised plaintiff it would be necessary that the amount of the indebtedness of defendants which plaintiff would carry on a chattel mortgage would not exceed $1,400. Plaintiff would not accept this proposition and suggested that defendants borrow the $1,400 needed from another agency of the government. Plaintiff agreed to accept $2,692 in full. Defendants made application for a loan to the Greensburg Production Corporation, but that agency would not agree to loan more than $1,100. Plaintiff proposed that it would accept the proceeds of the loans from the Federal Land Bank and the Greensburg Production Credit Corporation and

carry the balance of the debt on Sellon's note. On December 29, 1934, plaintiff received the proceeds of the two loans, released its mortgages and took two notes from defendants, each due in six months—one for $384 and the other for $212.50. The $384 note was paid some time after maturity. This action was brought to collect the note for $212.50.

The defendants alleged in their answer first that the note was void for want of consideration on account of the provisions agreed to by plaintiff in the creditor's statement. They pleaded a second defense that at the time of the execution of the two notes plaintiff agreed that if the $384 note was paid the $212.50 would be canceled, and that prior to the maturity of the $384 note defendants had a further agreement with plaintiff whereby plaintiff agreed to extend the time for the payment of the $384 note and still give defendants the benefit of the cancellation agreement. In its reply plaintiff pleaded a general denial. The case was submitted to the court without a jury. The court found for the plaintiff and gave judgment for it.

An examination of the evidence discloses that the note for $384 and the note for $212.50 were both given to secure money with which to purchase feed for the livestock of defendants. Mr. Sellon himself testified to this. The record shows clearly that the two notes were given as a separate transaction from the refinancing agreement. In view of this evidence the court was warranted in finding against defendants on the first defense pleaded.

As to the second defense, there was a conflict of evidence as to whether the plaintiff agreed to cancel the note sued on provided the $384 note was paid even though it was not paid when due. It is clear that the $384 was not paid when due.

The trial court heard and weighed this evidence and found for the plaintiff. Under such circumstances this court will not review this finding.

The judgment of the trial court is affirmed.